**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**
**ex rel. Norman Rille and Neal Roberts** **Plaintiff/Counterclaim-Defendant**

**vs** **4:04CV00986-WRW**

**SUN MICROSYSTEMS, INC.,**
**a Delaware Corporation** **Defendant/Counterclaim-Plaintiff**

**ORDER**

Pending is Plaintiff's Motion to Dismiss Defendant's Counterclaims, and to Strike Certain Affirmative Defenses (Doc. No. 67). Defendant has responded,[1] and Plaintiff has replied.[2] For the following reasons, Plaintiff's Motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

Plaintiff filed a complaint in intervention against Defendant as a result of government audits and investigations of Defendant's government contracts. The General Services Administration's Office of Inspector General ("OIG") performed the audits. Plaintiff alleges that Defendant "defectively disclosed information to the Government" when negotiating those contracts.[3] In response to Plaintiff's complaint, Defendant made two counterclaims: negligent

[1]Doc. No. 75.

[2]Doc. No. 85.

[3]Doc. No. 68.

performance of the audits and breach of contract by the Government.[4] Defendant also raised the affirmative defenses of laches, estoppel, waiver, and unclean hands, among others.[5]

Plaintiff asserts that Defendant's counterclaim of negligent audit should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[6] Plaintiff contends that Defendant's contract counterclaim should be dismissed because Defendant failed to follow statutory claim procedures.[7] Plaintiff also contends that Defendant's affirmative defenses should be struck because they are insufficiently pled as a matter of law.[8]

## II. DISCUSSION

### A. Defendant's Negligent Audit Counterclaim

It is well-settled that the United States is immune from suit, except to the extent that it has waived immunity.[9] The federal government's consent to suit is a prerequisite to jurisdiction,[10] "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[11] This requirement applies to counterclaims.[12]

---

[4]Doc. No. 76.

[5]Doc. No. 68.

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]*United States v. Orleans*, 425 U.S. 807, 814 (1976).

[10]*United States v. Mitchell*, 463 U.S. 206, 212 (1983).

[11]*United States v. Sherwood*, 312 U.S. 584, 586 (1941).

[12]*United States v. Timmons*, 672 F.2d 1373, 1378 (11th Cir. 1982).

The federal government has waived immunity for certain claims under the Federal Tort Claims Act ("FTCA"),[13] and the FTCA is the exclusive remedy for negligence claims against the federal Government. The federal government is liable under the FTCA when a private person would be liable in tort,[14] except that the FTCA specifically bars liability for certain government actions.

The party invoking jurisdiction bears the burden of proving subject matter jurisdiction.[15] Thus, to rule on the motion, I first must determine whether Defendant has established that Plaintiff waived its immunity to suit for the negligent audit counterclaim.

**1. The Nature of Defendant's Counterclaim**

By its own terms, the FTCA does not apply to discretionary functions,[16] to suits for libel, slander, or interference with contract.[17] A court may be required to look beyond the surface of a claim to determine its basis, and whether or not the claim is barred by statutory exception.[18]

Plaintiff contends that Defendant is actually suing under theories of libel, slander, and interference with contract rights (but provides little evidence that this claim is based on libel or slander). A portion of Defendant's counterclaim is brought under the statutorily barred theory of

---

[13]28 U.S.C. §§ 1346(b), 2671 *et. seq.* (2000).

[14]28 U.S.C. § 1346(b).

[15]*V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

[16]See Section A3 below for further discussion of the discretionary function test.

[17]28 U.S.C. § 2680(a), (h) (2000).

[18]*Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986).

interference.[19] But Defendant also alleges damages from OIG audit requests and from defending this case; both claims that are unrelated to contract rights. Thus, Defendant's counterclaim does not arise exclusively from a statutorily barred cause of action.

**2. Administrative Claim Requirement**

The FTCA also contains a procedural prerequisite: claims must be presented to the appropriate federal agency, and must be denied in writing, before federal courts may hear them.[20] Counterclaims are exempt from this requirement, but some courts have held that only *compulsory* counterclaims are exempt.[21] Generally, a compulsory counterclaim is one arising "out of the transaction or occurrence that is the subject matter of the opposing party's claim."[22]

Plaintiff argues that Defendant's failure to file an administrative claim deprives the Court of jurisdiction. Defendant responds that counterclaims are exempted from the administrative requirement, and that the negligent audit counterclaim is compulsory under the "logical relationship" test because Plaintiff's complaint and the counterclaim are both based upon the same audits and reports. I agree with Defendant on these points.

**3. Discretionary Function Test**

Regardless of how a claim is styled, the federal government is immune from suit for its discretionary actions.[23] The federal Government is not liable under "any claim . . . based upon

---

[19]Doc. No. 54.

[20]28 U.S.C. § 2675(a) (2000).

[21]See, e.g., *Spawr v. United States*, 796 F.2d 279, 281 (9th Cir. 1986).

[22]Fed. R. Civ. P. 13(a)(1)(A).

[23]28 U.S.C. § 2680(a) (2000).

the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*."[24] Even though Defendant's claims are bottomed on negligence – which is not statutorily barred -- the key question is whether the Government's audits were discretionary functions. If the audits were discretionary functions, then Plaintiff is immune, despite Defendant's assertion that the audits were negligently performed.

Governmental decisions to investigate and prosecute are discretionary functions.[25] Audits and investigations are so intertwined with prosecutorial discretion that they are legally indistinguishable.[26] Defendant complains that it was "left entirely in the dark" as to the government's conclusions during the audit, and was not given the chance to respond to those conclusions before the onset of litigation.[27] Defendant also complains of the expense of responding to a second audit.[28]

The first claim is without merit under *Sloan v. United States*,[29] because the Government decisions of when and how to prosecute were discretionary. The second claim is equally flawed because the results of the audits led to the subsequent litigation, so they too were discretionary. OIG's second audit is as much a discretionary function as the first; both audits represent the

---

[24]*Id.* (emphasis added).

[25]See *Sloan v. United States*, 236 F.3d 756, 760 (D.C. Cir. 2001).

[26]*Id.* at 762 (affirming the dismissal of a negligent audit claim, and holding that an agency audit and subsequent administrative action were indistinguishable).

[27]Doc. No. 76.

[28]*Id.*

[29]236 F.3d 756 (D.C. Cir. 2001).

investigative process, through which the Government sought to reveal the extent of Defendant's allegedly illegal behavior.

Defendant argues that this can be distinguished from previous negligent audit cases because previous plaintiffs did not successfully argue damages apart from prosecution. While Defendant has argued damages related directly to the audit, that does not mean that those damages do not also stem from prosecutorial discretion. In this case, the audits were tied to discretion inherent in prosecutorial functions. Even if an audit and subsequent prosecution are distinguishable, the audit is itself a discretionary function.[30]

**a. The Audits Were Discretionary Functions**

A two-part test determines whether contested government action is a discretionary function.[31] The first question is whether the challenged conduct contains an element of judgment or choice.[32] If it does, then the court must further determine whether it is the kind of conduct that the exception was meant to shield.[33] If the conduct meets both of these criteria, then it cannot be the basis of liability even when it is negligent, wrongful, or an abuse of discretion.[34] If the government is immune from suit, then the Court lacks subject matter jurisdiction.[35]

---

[30]Doc. No. 76.

[31]*Powers v. United States*, 996 F.2d 1121, 1124-25 (11th Cir. 1993).

[32]*Id.*

[33]*Id.* at 1125.

[34]See 28 U.S.C. § 2680(a); *Dalehite v. United States*, 346 U.S. 15, 33-34 (1953).

[35]*Dalehite*, 346 U.S. at 18.

The contested audits involved an element of choice, as they reflect the Government's choice to investigate Defendant in its capacity as a party to governmental contracts. The audits also reflect the Government's judgment as to whether Defendant had violated statutory restrictions on government contracts. The audits satisfy the first element of the discretionary function test because they contain elements of choice or judgment.

The next question is whether the audits are the type of action the discretionary function exception shields. Even if they are distinguishable from prosecution, these audits were an essential part of the Government's investigation into Defendant's suspected unlawful behavior; they were the primary means by which the Government could determine whether Defendant had violated statutes regulating government contracts. The audits are the very type of action that the discretionary function exception shields. Thus, the federal Government is immune even if the audits were performed negligently.

**b. The Audit Procedure Was Discretionary**

Defendant next attempts to distinguish discretion to perform the audits from discretion to perform the audits negligently. To support this argument Defendant cites *Appley Bros. v. United States*, which inquired "'whether the challenged actions were . . . controlled by mandatory statutes or regulations' or whether they were discretionary in nature."[36] *Appley Brothers* concluded that if the duty is mandatory, then it fails the discretionary function test because no discretion is involved.[37] Where the law specifically prescribes a course of action for the

---

[36]See 164 F.3d 1164, 1170 (8th Cir. 1999) (quoting *United States v. Gaubert*, 499 U.S. 315, 328 (1991)).

[37]*Id.*

government employee to follow, the conduct fails the discretionary function test for its lack of judgment or choice.[38]

Defendant's principal authority, *Appley Brothers*,[39] is distinguishable from this case because it focused on whether a government employee had discretion not to perform any investigation at all. In this case, the question is not whether the auditors had discretion not to undertake an investigation, but whether their investigatory procedure was discretionary.

**i. Audit Standards Contain Element of Judgment**

Defendant argues that certain audit procedures were mandatory because the government auditors were *required* to comply with Generally Accepted Government Auditing Standards ("GAGAS").[40] Defendant contends that the GAGAS require auditors to be "professional, objective, fact-based, nonpartisan, and non-ideological."[41] The GAGAS further advise that auditors "should be objective and free of conflicts of interest in discharging their professional responsibilities."[42] Auditors "should be free both in fact and appearance from personal, external, and organizational impairments to independence,"[43] and "should avoid situations that could lead reasonable third parties . . . to conclude that the auditors are not able to maintain

---

[38]*Berkovitz v. United States,* 486 U.S. 531, 536 (1988).

[39]See 164 F.3d at 1172.

[40]The GAGAS are published in the Government Auditing Standards, commonly known as the "Yellow Book." Current and past versions of the Yellow Book are available at http://www.gao.gov/govaud/ybk01.htm.

[41]GAGAS at 1.22.

[42]*Id*. at 1.24.

[43]*Id*. at 3.03.

independence . . . ."[44] Auditors are to avoid "preconceived ideas toward individuals, groups, organizations, or objectives of a particular program that could bias the audit."[45]

*Sloan* was argued under the same theory that Defendant advances in this case.[46] In *Sloan*, the plaintiff contended that the government violated a government auditing standard that requires auditors to "'maintain an independent attitude and appearance.'" [47]

Even assuming Defendant is correct that the term "should," as it is used in the GAGAS, denotes a requisite standard, the application of this standard requires substantial judgment or choice. The GAGAS advise that auditors should be objective and that they should be free from the appearance of bias, but these are not prescribed courses of action as described in *Berkovitz*. The GAGAS clearly did not prescribe the *procedures* by which the government had to conduct the audits, only the ethical standard by which any procedures should be judged. This is the very argument that failed in *Sloan*.[48]

**ii. Audit Standards Involve Public Policy**

The prosecutorial discretion inherent in audit proceedings is precisely the type that the discretionary function test is intended to shield. The types of judgment or choice protected are those that involve "considerations of public policy."[49] Judgments of policy considerations are

---

[44]*Id*. at 3.04.

[45]*Id*. at 3.07.

[46]See *Sloan*, 236 F.3d at 763 n.3.

[47]*Id.*

[48]236 F.3d 756 (D.C. Cir. 2001).

[49]*United States v. Gaubert*, 499 U.S. 315, 323 (1991).

distinguishable from professional judgment. The Eighth Circuit held in *Lather v. Beadle County* that "[w]here only professional, nongovernmental discretion is at issue, the discretionary function exception does not apply."[50] In *Sigman v. United States*, the Ninth Circuit described professional judgment as "analogous to functions performed by professionals in the private sphere every day."[51] Defendant admits that while the GAGAS involve a degree of professional judgment, their application also involves the exercise of "political, social, or economic judgment" because the auditors are required to apply the GAGAS in connection with a government audit to further government interests.[52]

*Sloan*[53] is more on point than *Lather*[54] or *Sigman*.[55] Government auditors are further required to exercise political, social, and economic judgments in connection with prosecutorial interests.[56]

Finally, Defendant contends that at least one standard does not involve a discretionary function. The GAGAS require auditors to report "the view of responsible officials of the audited program concerning the auditors' findings, conclusions, and recommendations; as well as

---

[50]879 F.2d 365, 368 (8th Cir. 1989) (refusing to categorize medical judgment as a discretionary function).

[51]217 F.3d 785, 796 (9th Cir. 2000) (refusing to label the mental evaluation of a service member as a discretionary function).

[52]See *Sloan*, 236 F.3d at 764 (discussing political, social, and economic judgments of the particular prosecutorial audit being litigated in that case).

[53]236 F.3d 756 (D.C. Cir. 2001).

[54]879 F.2d 365 (8th Cir. 1989).

[55]217 F.3d 785 (9th Cir. 2000).

[56]*Sloan*, 236 F.3d at 764.

planned corrective actions."[57] At least one court has found that a negligence claim for failure to share the conclusions of a government audit is actually a claim for misrepresentation[58] -- a cause of action specifically barred under the FTCA.[59]

Defendant has not clearly specified whether the Government failed to report the views and planned corrective actions, or only reported them after this case was filed. In the case of noncompliance, the claim is barred by the statutory exception for misrepresentation; if Defendant's assertion is that the Government simply failed to complete the audit before beginning litigation, then the claim fails because the Government cannot be blamed for Defendant's defense. Defendant might have preferred that the Government complete the audit before initiating this case, but Defendant cites no authority that would have required the Government to do so.

Plaintiff has not waived its immunity to suit for negligent performance of audit, because the audits are a discretionary function and are excluded from the FTCA. This Court therefore lacks subject matter jurisdiction over Defendant's counterclaim of negligent performance of audit.

**B. Defendant's Breach of Contract Counterclaim**

The Contract Disputes Act ("CDA") regulates contracts between executive agencies and private parties.[60] The first step in resolving a contract dispute is to file a claim with the

---

[57]GAGAS at 8.31.

[58]*Enterprise Elec. Corp. v. United States*, 825 F. Supp. 983, 986 (M.D. Ala. 1992).

[59]28 U.S.C. 2680(h).

[60]41 U.S.C. § 602 (2000).

contracting officer within the time prescribed by the CDA.[61] Once the contracting officer has decided the claim, the contractor may seek review by an agency board of contract appeals or the Court of Federal Claims.[62] Federal District Courts lack jurisdiction over contract-based claims that fall within the CDA.[63] The CDA expressly excepts claims "involving fraud."[64] This exception applies only to a claim brought "by the government against a contractor that is based on a claim by the contractor involving fraud."[65] Cases brought by the Government, where claims against the Government were fraudulently submitted, are reserved to the Department of Justice.[66]

Defendant has not filed a claim with the contracting officer in this case, and obviously has not sought review from a board of appeals or the Court of Federal Claims. Defendant asserts federal district court jurisdiction on the grounds that the CDA contains an exception for fraud claims. The fraud exception, however, applies to fraudulently *submitted* claims, not to claims by a contractor that the Government committed fraud on a contract. Even if the exception applied to contractual behavior, the statutory language limits the exception to claims brought by the Government against the contractor.

---

[61] 41 U.S.C. § 605(a) (2000).

[62] 41 U.S.C. §§ 606, 609(a)(1) (2000).

[63] 28 U.S.C. § 1346(a)(2) (2000).

[64] 41 U.S.C. § 605(a).

[65] *Id.*

[66] *Martin J. Simko Construction, Inc. v. United States*, 852 F.2d 540, 544 (Fed. Cir. 1988) ("'[T]he agencies do not have the authority to settle any issue involving fraud in the submission of the claim against the United States.'").

The Tucker Act expressly excepts federal district court jurisdiction over claims for more than $10,000,[67] and transfer to the Court of Federal Claims is appropriate only where the action "could have been brought at the time it was filed or noticed."[68]

Because this Court lacks subject matter jurisdiction, I will not discuss the amount of Defendant's claim. Transfer to the Court of Federal Claims would be inappropriate because Defendant has failed to take the first step mandated by the CDA -- filing a claim with the contracting officer.

Defendant did not comply with the Contract Disputes Act, and this Court is without subject matter jurisdiction to adjudicate Defendant's counterclaim for breach of contract.

### C. Defendant's Affirmative Defenses

"Motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted."[69] A court must deny a motion to strike "if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear."[70] Furthermore, motions to strike are not generally granted unless the moving party has shown prejudice.[71]

#### 1. Sufficiency as a Matter of Law

---

[67]28 U.S.C. § 1346(a)(2).

[68]28 U.S.C. § 1631 (2000).

[69]*Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977).

[70]*Id.*

[71]*Mark v. Gov't Properties Trust, Inc.*, No. 8:06CV769, 2007 WL 1319712, at *3 (D. Neb. Apr. 5, 2007).

Plaintiff moves to strike Defendant's affirmative defenses of laches, estoppel, waiver, and unclean hands.[72] A motion to strike affirmative defenses under Fed. R. Civ. P. 12(f) is appropriate where the defenses do not meet the pleading requirements of the Federal Rules of Civil Procedure.[73]

The purpose of pleading an affirmative defense is to give the opposing party notice, and a chance to argue against the defense.[74] The opposing party need only receive notice that the "particular defense is in play in the case, not necessarily how that defense applies."[75] The Eighth Circuit has gone so far as to hold an affirmative defense sufficiently raised by its bare assertion.[76] Affirmative defenses may be stricken if they are "legally insufficient, redundant, immaterial, impertinent, or scandalous."[77]

Plaintiff concedes that Defendant is not required to plead affirmative defenses with particularity. Plaintiff asserts that the defenses must be sufficient to put them on notice, but complains that they lack notice of "the defenses' quality or dimensions."[78] Plaintiff cannot expect to know the quality or dimensions of the defenses, only that those defenses "are in play."[79] Plaintiff has received sufficient notice and has failed to show prejudice if the defenses remain. Further, Defendant has agreed to voluntarily dismiss its affirmative defense of laches.

---

[72]Doc. No. 67.

[73]*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

[74]*Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

[75]*Mark*, 2007 WL 1319712, at *2.

[76]*Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997).

[77]*Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998).

[78]Doc. No. 68.

[79]*Mark*, 2007 WL 1319712, at *2.

**2. Formal Reservation**

While affirmative defenses must be included in a defendant's response,[80] a formal "reservation" of the right to bring further defenses, strictly speaking, serves no purpose[81] because defendants retain the right to add defenses through a properly filed motion to amend.[82]

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. No. 67) is GRANTED, and Plaintiff's Motion to Strike Certain Affirmative Defenses (Doc. No. 67) is GRANTED with respect to the reservation of the right to bring further defenses, but DENIED otherwise.

IT IS SO ORDERED this 28th day of October, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

[80]Fed. R. Civ. P. 8(c).

[81]*United States v. Martell*, 887 F. Supp. 1183, 1193 (N.D. Ill. 1995).

[82]*Albee Homes, Inc. v. Lutman*, 406 F.2d 11, 13 (3d Cir. 1969). See also Fed. R. Civ. P. 15(a)(2) (explaining that courts should freely give leave to amend when justice so requires).